Ghxef Justice Robertson
delivered the o union of the court.
This is a suit in chancery for a settlement between a guardian and his ward; and the only question presented for consideration is, whether the guardian should be held responsible for $1600 of the money of his wards, received by him in 1818, and vested in the purchase of 16 shares of Kentucky Bank stock, assigned him as their guardian in 1819, and then at par but now greatly depreciated; or whether they should loose the depreciation and he-should be exonerated from responsibility? The circuit court decreed that the wards should accept the bank stock, as a payment of $1600, and that, consequently, the guardian should not be responsible for the depreciation.
Anciently, guardians were held responsible for the sufficiency of all personal security, which they ventured to take, for the estate of their wards; and executors were held to the same strict responsibility; Terry vs. Terry, Pre. in ch. 273. But such a trustee, was not responsible if he loaned the trust fund, on real security, deemed good at the time of the loan, or vested it in the public funds. The severity of this doctrine has been relaxed in some degree, by some more modern cases; See I. Pr. Wm. 241.
It is not necessary to decide, in this case, whether the responsibility of executors and of guardians, is now of the same kind and degree, ner how far that *239 ■of guardians, may be increased or altered, by the statutory law of this state; I. Dig 642-3. For we are of opinion that the defendant in error, guardian,) should be charged with the full amount of the fund, vested by him in bank stock, whether his liability be tested by common or statutory law. We cannot consider stock in the Bank of Kentucky, as '■'■public funds,” or in other words, government stock, tlependtng, for its credit and security, on the faith, solvency, and stability of the government, Fifteen of the sixteen shares of stock, had been transferred by the defendant in his own right, in 1818, (whilst he was guardian,) to one Sinclair, and were transferred to him. as guardian, by Sinclair, in 1819. He did not account to, or settle with, the county court, until the year 1827. It does not appear that he was unable to sell the stock advantageously, or without material loss, before it had depreciated essentially; If he had made an annual report, (as he ought to have done,) to the county court, the security of the wards might-have been increased, and their estate saved from unnecessary peril, and from the eontingenciesto which the bank stock was liable.
Guardian oiTis'^wards’ estate, not onl^j biu'shonld act vigilantly a,1Ll circum. spcctly.
Chinn, for plaintiffs; Wickliffe^and Wooley, for defendants.
It seems to us that, in such a case, the loss should fall on the guardian. He may have acted in good faith, but he did not guard the interests of his wards, with as much vigilance and circumspection as sound policy, as well as authority, wisely exacts from those to whom the estates of infants may he confided, Something more than mere good faith should be required of guardians.
r , , It is not necessary to delermine how far the guardian incurred personal responsibility, by the act of commuting the money of his wards, for bank stock. If his authority were conceded, the circumstances of this case should impose the eventual risk and loss on himself.
Wherefore, the decree of the circuit court is reversed, and the cause remanded, with instructions to render a decree conformable to this opinion.